**STATE of Missouri, Respondent,**

v.

**Jordan B. SMITH, Appellant.**

**No. WD 44570.**

Missouri Court of Appeals,
Western District.

June 2, 1992.

Anthony C. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

Jordan B. Smith appeals his convictions for second degree arson and second degree burglary.

On appeal, Smith does not challenge the sufficiency of the evidence to support his convictions. Suffice it to say that the evidence adduced at trial revealed that Smith, apparently disgruntled with the church which he had attended, broke into the church; called 911 and informed the dispatcher that he was armed and would kill anyone who interfered with a statement he wanted to make. Eventually, a police officer convinced Smith to come out of the building, but during the officer's conversation with Smith, smoke was observed coming out of the church. A subsequent investigation indicated that there were at least three separate fires in the church. Smith admitted to starting the fires using a cigarette lighter.

Smith raises a single point on appeal alleging that the trial court clearly erred in overruling his objection to the state's use of a peremptory strike to remove the only black member of the venire panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Smith also claims that the trial court failed to require the state to articulate a race neutral explanation for the peremptory strike; the reason given by the prosecutor for the peremptory strike was pretextual; and the trial court failed to properly scrutinize the prosecutor's voluntary explanation offered at trial.

The initial venire panel consisted of 50 members, only one of which was black. At the conclusion of the voir dire examination, Smith's counsel noted that Lewis Walker, the only black member of the panel had been struck by the state through the use of a peremptory strike. Thereafter, Smith's counsel invoked a *Batson* challenge. The trial court did not require the prosecutor to articulate reasons for his peremptory strike of venireperson Walker and denied Smith's motion to quash the jury. The prosecutor voluntarily stated, on the record, the reason for his peremptory strike. Prior to stating his reasons for the peremptory strike, the prosecutor stated his belief that Smith's *Batson* objection was not cognizable because Smith was white and the excluded juror was black, a belief in which the trial court indicated a concurrence.[1]

Following the trial and prior to sentencing, a hearing was conducted on Smith's motion for judgment of acquittal or, in the alternative, for a new trial. At the hearing, counsel for Smith informed the trial court that the case of *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) was pending before the United States Supreme Court. The trial court then stated that the reasons given by the prosecutor were race-neutral and voided the necessity for a new trial. Smith's motion for judgment of acquittal, or in the alternative, for a new trial was overruled.

■■■ The state correctly points out that Smith failed to make a timely *Batson* objection because he failed to raise his claim before making his peremptory strikes. A *Batson* motion is waived unless timely raised. *State v. English*, 795 S.W.2d 610, 612 (Mo.App.1990). The proper time to raise a *Batson* claim is after the state has

---

1. The trial in the present case occurred prior to the decision of the United States Supreme Court in *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which extended *Batson* and concluded that the race of the defendant bears no reference to defendant's standing to raise a claim.

made its peremptory strikes and before the defendant makes his peremptory strikes. *Id.* Smith has thus failed to preserve the issue for review. Ex gratia, the merits of Smith's claim are considered and rejected on the basis that the decision of the trial court is not found to be clearly erroneous.

■ When determining whether the trial court's finding that the prosecutor did not use his peremptory challenges in a purposeful and racially discriminatory manner was clearly erroneous, this court gives deference to the finding of the trial court because such finding rests largely on the trial court's determination of credibility. *Hernandez v. New York*, —— U.S. ——, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991).

■ A three-step process for evaluating whether a prosecutor has used peremptory challenges in a manner violative of the equal protection clause was set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96, 97, 106 S.Ct. at 1722, 1723. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. *Id.* at 97–98, 106 S.Ct. at 1723–24. Third, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1724.

In the present case, the prosecutor offered a race-neutral explanation, which the trial court ultimately ruled was not intentional discrimination. However, Smith contends that the reasons given by the prosecutor for striking venireperson Walker were not race neutral. In response to Smith's objection, the prosecutor explained as follows:

[Prosecuting Attorney]: It is my belief that during questioning of this witness, particularly in response to specific questions which he answered to me—and I was a very close distance to him at the time—it was indicated to me, both by his facial expressions and by his tone of voice, that—his displeasure at being here, his displeasure at answering my questions. And it appeared to me, albeit it was a gut reaction, a gut determination on my part, that he resented his having to be here and having to answer questions. And we exercised our peremptory challenge on that basis.

■ In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. *Hernandez*, 111 S.Ct. at 1866. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Id.* (citations omitted). " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (citations omitted).

"A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race neutral." *Hernandez*, 111 S.Ct. at 1866.

■ A prosecutor's explanation for a peremptory strike need not rise to the level justifying the exercise of a challenge for cause. *Batson* leaves room for the state to exercise its peremptory challenges on the basis of the prosecutor's "hunches" and past experiences as long as the factors relied on are race-neutral. *State v. Kempker*, 824 S.W.2d 909 (Mo. banc 1992).

■ The prosecutor here explained that the response and demeanor, specifically the facial expression and tone of voice, of venireperson Walker during voir dire caused him to believe that Walker was displeased and resented being present at the voir dire

and answering questions. Clearly, the prosecutor's explanation was based on race neutral factors.

"Once the prosecutor offers a race-neutral basis for this exercise of peremptory challenges, '[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination.'" *Hernandez,* 111 S.Ct. at 1868. (citation omitted). The trial court chose to believe the prosecutor's race-neutral explanation for striking venireperson Walker, which as previously stated, is entitled to great deference because in a typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. *Id.* "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* at 1869. "As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judges' province.'" *Id.* (citations omitted).

A careful review of the record indicates no clear error in the trial court's determination that the prosecutor did not discriminate on the basis of race. Smith emphasizes the statements of the trial judge where she stated that she could neither confirm nor deny the fact that venireperson Wilson exhibited displeasure through his facial expressions because she "wasn't necessarily watching him" but was "listening to the answers." The focus, however, is on the explanation given by the prosecutor, as previously discussed at great length. The prosecutor's explanation was accepted as truthful and found by the trial court to be race-neutral. No error, clear or otherwise, can be discerned from the trial court's finding.

Judgment affirmed.

All concur.